IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CURRY COMMUNICATIONS, INC., )
        Plaintiff, )
         )
  vs )  Civil Action No. 05-1326
         )
VERIZON DIRECTORIES CORP., )
        Defendant. )

## REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

It is respectfully recommended that the defendant's motion to dismiss the complaint (Docket No. 5) be granted.

II. <u>Report</u>:

Presently before the Court is a motion to dismiss the complaint for failure to state a viable claim submitted by the defendant, Verizon Directories Corp. ("VDC").

The plaintiff, Curry Communications, Inc. ("Curry"), has filed a one-count complaint against VDC for intentional interference with prospective contractual relations. The Court's diversity jurisdiction is invoked.[1]

The record shows that Curry provides telecommunications services to residential and business customers in Pittsburgh and surrounding areas. VDC provides telephone directory listings and advertising services in Pittsburgh and surrounding areas. The crux of Curry's claim is set forth in paragraph 4 of its complaint as follows:

---

[1]. The plaintiff is a Pennsylvania Business Corporation with its business offices located in Monroeville, PA. The defendant is a Delaware Corporation with a registered address in Philadelphia, PA. The amount in controversy is said to exceed the statutory limit.

> This Complaint concerns Defendant's intentional and reckless behavior in failing to print Plaintiff's advertising in accordance with its contracted-for arrangements over a period of years. In particular, Defendant's exclusion of Plaintiff's advertising since 1997 has been so reckless as to amount to intentional interference with prospective business relationships...

It is alleged in the complaint that beginning in 1997, Curry contracted with VDC to advertise its business in telephone directories such as the Yellow Pages, White Pages, and Superpages.com of VDC's sister company, Verizon Pennsylvania, Inc. ("Verizon"); that the primary directories in which Curry sought to advertise its business were the Monroeville Community Directory Yellow and White Pages, the Pittsburgh East Yellow Pages, and the Community directories for New Kensington, Oakmont, McKeesport, Greensburg, Irwin, and Latrobe; that despite its contracted-for arrangements with VDC, Curry's requests that its business be advertised under listings for "Telecommunications Companies" and "Telecommunications Equipment & Systems - Service/Repair" were not displayed, or were incorrectly displayed in several of the aforesaid directories during periods from 2001-2005; that due to its efforts to ensure that its advertising would be correctly displayed, Curry believes VDC's on-going failure to publish its advertisements, or to publish them incorrectly was intentional, so as to interfere with its business relations; that VDC's tortious conduct was designed to impede Curry's business and aid Verizon, which is in direct competition with Curry; and that as a result of VDC's actions, Curry has lost business revenues in excess of $75,000.

VDC has moved to dismiss the complaint on several grounds pursuant to F.R.Civ.P. 12(b)(6). In support of its motion to dismiss, VDC argues that Curry's claim is barred

by the "gist of the action" doctrine and the "economic loss" doctrine.  VDC also asserts that the complaint fails to adequately set forth a claim for intentional interference with prospective contractual relations, and that any claim for damages predating September 23, 2003 is barred by Pennsylvania's two-year statute of limitations.

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Estelle v. Gamble, 429 U.S. 97 (1976); Shaev v.Saper, 320 F.3d 373, 375 (3d Cir. 2003).  We agree that Curry's complaint, which is premised on VDC's failure to properly display its advertising in various directories, is barred by the "gist of the action" doctrine.

Under Pennsylvania law, "courts are cautious about permitting tort recovery based on contractual breaches." Pittsburgh Construction Co. v. Griffith, 834 A.2d 572, 581 (Pa.Super. 2003), citing Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).  Thus, courts utilize the "gist of the action" doctrine, "which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims."  Griffith, supra, 834 A.2d at 581.  Also see, Bohler-Uddeholm America, Inc. v. Ellwood Group, 247 F.3d 79, 103 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002) (stating: Pennsylvania courts utilize the "gist of the action" test "to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract").

In Bohler-Uddeholm, supra, the Third Circuit Court of Appeals discussed the "gist of the action" test as follows:

> to be construed as a tort action, the [tortious] wrong
> ascribed to the defendant must be the gist of the
> action with the contract being collateral.... [T]he

> important difference between contract and tort
> actions is that the latter lie from the breach of duties
> imposed as a matter of social policy while the
> former lie for the breach of duties imposed by
> mutual consensus.

Id., quoting Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581, 590 (Pa.Super. 1996), cert. denied, 695 A.2d 787 (Pa. 1997). Stated differently, a "[b]reach of contract, without more, is not a tort." USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 440 (3d Cir. 1993). Where alleged tortious conduct arises from the same facts supporting a breach of contract claim, the tort claim cannot lie unless it is the "gist of the action", with the contract being collateral. Id.

      Here, Curry's tort claim for intentional interference with prospective business relations is barred by the "gist of the action" doctrine. That is because a claim should be limited to one in contract when "the parties' obligations are defined by the terms of the contract[ ], and not by the larger social policies embodied in the law of torts." Bohler-Uddeholm, 247 F.3d at 104, quoting Bash v. Bell Telephone Co., 601 A.2d 825, 830 (Pa.Super. 1992). Accord Griffith, 834 A.2d at 582.

      For instance, in Bohler-Uddeholm, the Court examined claims of breach of fiduciary duty and misappropriation of trade secrets arising from a contract dispute, and ruled that the claim for breach of fiduciary duty was the "gist of the action", while the misappropriation of trade secrets claim concerning the plaintiff's "know-how" was embodied by the parties' contract. 247 F.3d at 104-106. In differentiating between the claims, the Court found that since the parties before it were shareholders in a joint venture, the breach of fiduciary duty claim was imposed as a matter of social policy requiring fair dealings between joint

venturers, Id. at 104-105; hence, the parties had fiduciary obligations "that went well beyond the particular obligations contained in the[ir] Agreement", such that the contract was collateral to the breach of fiduciary claim. Id. at 105.  Conversely, the misappropriation of trade secrets claim pertaining to the plaintiff's "know-how" was contractually prohibited, such that the gist of the claim was actually breach of contract. Id. at 106.

Unlike in Bohler-Uddeholm, where the parties had fiduciary obligations that went beyond their contract (due to their relationship in a joint venture), Curry and VDC appear to have no duties apart from those set forth in their contract.  Indeed, as recited above, Curry admits that "[its] Complaint concerns Defendant's intentional and reckless behavior in failing to print Plaintiff's advertising in accordance with its contracted-for arrangements".[2]  Curry also states in its complaint that "[d]espite its contracted-for arrangements with Defendant, Plaintiff's requested advertisements ... were not included [in various directories]".[3]

In opposing VDC's motion to dismiss, however, Curry now argues that VDC owed it additional duties apart from their contract -- tantamount to a social policy not to interfere with its business relations -- by virtue of the Telecommunications Act of 1996, 47 U.S.C. § 251, et seq. (the "Act").  Tellingly, Curry's complaint never mentions the Act, nor alleges any violation of it.  Still, in hopes of salvaging its claim, Curry argues that 47 U.S.C. § 251(b)(3) imposes an extra-contractual duty on VDC.  That portion of the Act provides:

> (b) Obligations of all local exchange carriers.  Each local exchange carrier has the following duties:
> ....

---

2. See, complaint at ¶ 4.

3. Id. at ¶¶ 7-9.

> (3) Dialing parity.  The duty to provide dialing parity to competing providers of telephone exchange service and telephone toll service, and <u>the duty to permit all such providers to have nondiscriminatory access to telephone numbers, operator services, directory assistance, and directory listing,</u> with no unreasonable dialing delays.

47 U.S.C. § 251 (b)(3) (emphasis added).

The above provision of the Act expressly pertains to "local exchange carriers". The Act defines the term "local exchange carrier" in relevant part as: "any person that is engaged in the provision of telephone exchange service or exchange access."  47 U.S.C. § 153 (26).

VDC does not provide telephone exchange service or exchange access.  Rather, Curry admits that VDC provides telephone directory listings and advertising services and does not provide local or long distance telecommunication services of any kind.[4]  Since VDC is not a "local exchange carrier" for purposes of the Act, it is not a covered entity thereunder, nor subject to the Act's provisions.  See, <u>U.S. West Communications, Inc. v. Minnesota Public Utilities Com'n.</u>, 55 F.Supp.2d 968, 984 (D.Minn. 1999).[5]

---

4.   See, defendant's motion to dismiss at ¶ 2 and plaintiff's answer thereto.

5.   Curry cites <u>MCI Telecommunications Corp. v. Michigan Bell Telephone Co.</u>, 79 F.Supp.2d 768 (E.D.Mich. 1999), for the proposition that a local exchange carrier's duty to provide nondiscriminatory access to directory listings under the Act extends to its affiliates.  In <u>MCI Telecommunications</u>, the Court stated: "the regulations [at 47 C.F.R. § 51.5.] define 'directory listings'... as any information 'that the telecommunications carrier or an affiliate has published, caused to be published, or accepted for publication in any directory format.'  Thus, the duty to publish competitors' business customers in a yellow pages directory on a nondiscriminatory basis extends to <u>incumbent carriers</u> who have caused their own customers listings to be published in a yellow pages directory."  <u>Id.</u> at 802 (emphasis added).  Likewise, in <u>U.S. West Communications</u>, supra, the Court, citing 47 C.F.R. § 51.5, stated: "[t]he FCC concluded that the term 'directory listings' encompasses directory listings published by a telecommunications carrier and its 'affiliates', but then never defines the term 'affiliate'.  <u>Given the Act's express limitation of covered entities to telecommunications carriers</u>, a telecommunications carrier's control of an

(continued...)

Based on the foregoing, VDC's alleged obligation to Curry to correctly display its advertisements arises solely from the parties' contract and is not imposed as a matter of social policy. Thus, the gist of Curry's tort claim is breach of contract, and its complaint should be dismissed on that basis.

In addition, Curry has failed to state a cognizable claim for intentional interference with prospective contractual relations. Pennsylvania recognizes the tort of intentional interference with existing contractual relations and also the tort of intentional interference with prospective contractual relations. U.S. Healthcare v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 925 (3d Cir. 1990). To state a claim for intentional interference with prospective contractual relations, a plaintiff must allege (1) a prospective contractual relationship; (2) a purpose or intent to harm the plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occurrence of actual damage. Silver v. Mendel, 894 F.2d 598, 602 (3d Cir. 1990), cert. denied, 110 S.Ct. 2620 (1990).

The first element of this tort, "a prospective contractual relationship", has been defined as "something less than a contractual right, something more than a mere hope." Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1015 (3d Cir. 1994), cert. denied, 115 S.Ct. 1691 (1995), quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466 (Pa. 1979). It is "a reasonable probability" that contractual relations will be realized. Id. To state a viable claim, a

---

5.  (...continued)
entity must be a prerequisite for finding that the entity is an affiliate within the meaning of the FCC's rules." 55 F.Supp.2d at 984, n.13 (emphasis added). As discussed above, VDC is not a "local exchange carrier" so as to be subject to the Act, and Curry's complaint makes no mention of the Act. Thus, we cannot say that the Act imposes extra-contractual duties on VDC.

complaint must allege that a particular contract or express offer was being contemplated by a plaintiff and/or third party which was improperly impeded by the defendant's action. See, Silver, supra, 894 F.2d at 602 (plaintiff's complaint specified several contracts and bids that were in the negotiating or drafting phase); accord, Glenn v. Point Park College, 272 A.2d 895, 897-899 (Pa. 1971) (appellant's complaint specified that an offer had been made for a particular property).

Indeed, a "plaintiff's pleadings must identify specific business relationships suffering as a result of the defendant's interference." Applied Technology, Intern., LTD. v. Goldstein, 2004 WL 2360388, *6 (E.D.Pa., Oct. 20, 2004), citing, Brunson Communications, Inc. v. Arbitron, Inc., 239 F.Supp.2d 550, 578 (E.D.Pa. 2002) (where the Court granted a motion to dismiss for failure to state a claim where plaintiff failed to identify "a single past, present or prospective customer... with whom it had a prospective contract which did not finalize because of defendant's actions"). Here, Curry does not allege in its complaint that any prospective agreement was being contemplated between itself and a third party which VDC impeded. Hence, it fails to state a claim for intentional interference with prospective contractual relations.[6]

Therefore, it is recommended that the defendant's motion to dismiss the complaint be granted.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file

---

6. Having found that the complaint is barred by the "gist of the action" doctrine and fails to state a cognizable claim for intentional interference with prospective contractual relations, we do not consider the defendant's alternate arguments for dismissal of the complaint.

timely objections may constitute a waiver of any appellate rights.

                                                                                       Respectfully submitted,

                                                                                       s/ ROBERT C. MITCHELL
                                                                                       United States Magistrate Judge

Dated: February 9, 2006